**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| SLWP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 9:26-cv-01522-BHH |
| | ) | |
| MGoBlue, LLC; Pure Home 365, LLC; RTC | ) | Hon. Bruce Howe Hendricks |
| Management Group, LLC; Rob Terwilliger; | ) | |
| and Rob Shumay, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION TO STRIKE AND MOTION FOR A MORE DEFINITE STATEMENT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 1

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT ....................................................................................................................... 3

    I.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DEFENDANTS TERWILLIGER OR SHUMAY .................................................. 5

    II.    PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW ............................................................................................... 8

    III.    PLAINTIFF'S DEFAMATION CLAIM FAILS TO PLEAD THE REQUIRED ELEMENTS ................................................................................... 17

    IV.    IF PLAINTIFF'S CLAIMS SURVIVE DISMISSAL, PARAGRAPHS 9, 10, AND 11 OF PLAINTIFF'S COMPLAINT SHOULD BE STRICKEN PURSUANT TO RULE 12(F) AS IMMATERIAL, IMPERTINENT, AND PREJUDICIAL .................................................................................................. 25

    V.    IN THE ALTERNATIVE TO DISMISSAL, PLAINTIFF SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT PURSUANT TO RULE 12(E) ................................................................................ 27

CONCLUSION .................................................................................................................. 29

# TABLE OF AUTHORITIES

**Page**

CASES

*56 Leinbach Inv., LLC v. Magnolia Paradigm, Inc.*,
411 S.C. 466, 769 S.E.2d 242 (2014) .........................................................................9, 10, 14

*Adams v. Bain*
697 F.2d 1213 (4th Cir. 1982) ..............................................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................................5, 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................5

*Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc.*,
775 F.Supp.2d 730 (S.D.N.Y. 2011)...................................................................................23

*Bob Hammond Const. Co., Inc. v. Banks Const. Co.*,
312 S.C. 422, 440 S.E.2d 890 (1994) ..................................................................................5

*Boone v. Sunbelt Newspapers, Inc.*,
347 S.C. 571, 556 S.E.2d 732 (Ct. App. 2001)..........................................................19 (fn. 3)

*Bouvier v. Porter*,
386 N.C. 1, 900 S.E.2d 838 (2024)............................................................................19 (fn. 3)

*Campbell v. Internation Paper Co.*,
2013 WL 1874850 (D.S.C. May 3, 2013)............................................................................23

*Carolina Cable Network v. Alert Cable TV, Inc.*,
316 S.C 98, 447 S.E.2d 199 (1994) ........................................................................14 (fn. 2)

*Childs v. City of Columbia*,
87 S.C. 566, 70 S.E. 296 (1911) .............................................................................14 (fn. 2)

*Coleman v. McMillan*,
2014 WL 1249290 (D.S.C. Mar. 26, 2014...........................................................................26

*Combs v. Bakker*,
886 F.2d 673 (4th Cir. 1989) .................................................................................................4

*Cummings v. Lumbee Tribe of N.C.*,
 590 F.Supp 769 (E.D.N.C. 2008)..................................................................................25

*Cunningham v. City of New Orleans*,
 336 So.3d 977 (La. 2021) ..............................................................................................24

*Doe v. Salisbury University*,
 123 F.Supp.3d 748 (D. Md. 2015)............................................................................20–21

*Drews Co., Inc. v. Ledwith-Wolf Assocs., Inc.*,
 296 S.C. 207, 371 S.E.2d 532 (1988) ......................................................................9, 11, 12

*E.E. by and through Espey v. Eagle's Nest Found.*,
 200 F.Supp.3d 626 (D.S.C. 2016)....................................................................................6

*English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*,
 172 F.3d 862, 1999 WL 89125 (4th Cir. 1999) (unpublished) ................................................20

*Erby v. Webster Univ.*,
 2013 WL 4586018 (D.S.C. Aug. 28, 2013)........................................................................27

*ESAB Group, Inc. v. Centricut, LLC*,
 34 F.Supp.2d 323 (D.S.C. 1999)......................................................................................6

*e-ventures Worldwide, LLC v. Google, Inc.*,
 188 F.Supp.2d 1265 (M.D. Fla. 2016)..............................................................................24

*Fountain v. First Reliance Bank*,
 398 S.C. 434, 730 S.E.2d 305 (Ct. App. 2012)...............................................................24–25

*Fuller v. Eastern Fire & Casualty Insurance Co.*,
 240 S.C. 75, 124 S.E.2d 602 (1962) .................................................................................9

*Grayson v. Anderson*,
 816 F.3d 262 (4th Cir. 2016) ..........................................................................................4

*In Touch Concepts Inc. v. Cellco Partnership*,
 949 F.Supp.2d 447 (S.D.N.Y. 2013)................................................................................23

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945).......................................................................................................6

*John D. Hollingsworth on Wheels, Inc. v. Arkon Corp.*,
 279 S.C. 183, 305 S.E.2d 71 (1983) ............................................................................11, 13

iv

*Kissinger-Stankevitz v. Town of Tappahannock*,
    750 F.Supp.3d 590 (E.D. Va. 2024) ...............................................................................22

*Lin v. TipRanks, Ltd.*,
    19 F.4th 28 (1st Cir. 2021) ............................................................................................22

*Mali v. Odom*,
    295 S.C. 78, 367 S.E.2d 166 (Ct. App. 1988).......................................................12, 13

*Moore v. Cox*,
    341 F.Supp.2d 570 (M.D.N.C. 2004) .............................................................................25

*Mylan Labs., Inc. v. Akzo, N.V.*,
    2 F.3d 56 (4th Cir. 1993) .................................................................................................4

*National Tire & Rubber Co. v. Hoover*,
    128 S.C. 344, 122 S.E. 858 (1924) ...............................................................................11

*Phelps v. Powers*,
    5 F.Supp.3d 1036 (S.D. Iowa 2013) ..............................................................................21

*Rivera v. Patterson,*
    2023 WL 12100560 (D.S.C. May 2, 2023).............................................................26, 27

*S.C. Finance Corp. of Anderson v. West Side Finance Co.*,
    236 S.C. 109, 113 S.E.2d 329 (1960) ..................................................................9, 11, 13

*Scottsdale Capital Advisors Corp. v. The Deal, LLC*,
    887 F.3d 17 (1st Cir. 2018)............................................................................................22

*Shibursky v. International Business Machines Corp.*,
    820 F.Supp. 1169 (D. Minn. 1993)................................................................................21

*Solaris, Inc. v. American Southern Ins. Co.*,
    No. 2:20-v-444-BHH, 2022 WL 9406809 (D.S.C. Sept. 29, 2022) .............................17

*State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*,
    381 F.Supp.3d 536 (D. Md. 2019).................................................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).........................................................................................................5

*U.S. Ex rel. Smith v. Yale University*,
    415 F.Supp.2d 58 (D. Conn. 2006)................................................................................20

*Verfuerth v. Orion Energy Sys., Inc.,*
  35 F.Supp.3d 640 (E.D. Wisc. 2014) ..................................................................26

*Vreven v. American Ass'n of Retired Persons*,
  604 F.Supp.2d 9 (D.D.C. 2009) ..........................................................................23

*Walters v. Linhof*,
  559 F.Supp. 1231 (D. Colo. 1983) ......................................................................20

*Wichansky v. Zowine*,
  150 F.Supp.3d 1055 (D. Ariz. 2015) ...................................................................24

*Williams Furniture Corp. v. Southern Coatings & Chemicals Co.*,
  216 S.C. 1, 56 S.E.2d 576 (1949) .......................................................................16

*Yin v. Columbia Int'l Univ.*,
  2016 WL 5349090 (D.S.C. Sept. 26, 2016) ........................................................26

STATUTES

28 U.S.C. § 1332 .........................................................................................................3

S.C. Code Ann. § 36-2-802 ........................................................................................7

OTHER AUTHORITIES

Fed. R. Civ. P. 8(a) .....................................................................................................6

Fed. R. Civ. P. 10(c) ...................................................................................................5

Fed. R. Civ. P. 12(b)(2) ................................................................................1, 2, 8, 30

Fed. R. Civ. P. 12(b)(6) .............................................................1, 5, 9, 10, 15, 20, 30

Fed. R. Civ. P. 12(e) .....................................................................................1, 6, 28, 30

Fed. R. Civ. P. 12(f) ......................................................................................1, 5, 27, 30

Restatement of Contract § 331, Comment B (1932)................................................12

Restatement (Second) of Conflict of Laws § 141 (1971) ........................................18

Restatement (Second) of Torts § 558 (1977)..............................20, 21, 23, 24, 25, 26

Restatement (Second) of Torts § 558(a) ...........................................................20, 21

Restatement (Second) of Torts § 558(b) .......................................................................23

Restatement (Second) of Torts § 558(c) .......................................................................24

Restatement (Second) of Torts § 558(d) .......................................................................25

Restatement (Second) of Torts §§ 569-574 .................................................................25

Restatement (Second) of Torts § 575.............................................................................25

Restatement (Second) of Torts § 577(1).........................................................................23

Restatement (Second) of Torts § 622.............................................................................25

Restatement (Second) of Torts § 622A...........................................................................25

MGoBlue, LLC ("MGoBlue"), Pure Home 365 ("Pure Home"), RTC Management Group, LLC ("RTC"), Rob Terwilliger ("Terwilliger"), and Rob Shumay ("Shumay") (collectively, "Defendants"), respectfully submit this Memorandum in Support of their Motion to Dismiss Plaintiff SLWP, LLC's ("Plaintiff" or "SLWP") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) (as to Defendants Terwilliger and Shumay, only) and Rule 12(b)(6), or, in the alternative, Motion to Strike certain allegations pursuant to Federal Rule of Civil Procedure 12(f) and Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e).

## INTRODUCTION

On March 11, 2026, Plaintiff initiated this civil action against Defendants, asserting claims for declaratory judgment, breach of contract, and defamation. The claims allegedly arise out of or relate to a contract which Plaintiff contends was entered into by and between it and all of the Defendants in or around November 2025.

However, Defendants Terwilliger and Shumay did not execute the contract in their individual capacities, did not bind themselves to any contractual obligations with SLWP, did not agree to exclusive jurisdiction in any South Carolina court, and are not subject to personal jurisdiction in this State. No allegation in the Complaint establishes personal jurisdiction over either Terwilliger or Shumay and therefore, they must be dismissed. Rule 12(b)(2), Fed. R. Civ. P.

Further, Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed in its entirety pursuant to Rule 12(b)(6). The breach of contract claim is fatally defective because Plaintiff has failed to plead actual damages. Instead, its sole quantified allegation is a speculative projection of future gross revenue untethered to any actual loss. Moreover, to the extent either or both the declaratory judgment claim and/or breach of contract claim is asserted against Terwilliger and Shumay individually, the claims must be dismissed because neither is a

1

party to the contract in dispute. Plaintiff's defamation claim is also deficient in numerous material respects. Plaintiff failed to allege facts sufficient to identify the allegedly defamatory statements, the speaker, the recipient, the location of publication, or any facts supporting fault or harm.

In the alternative, if the Court declines to dismiss the claims pursuant to Rule 12(b)(6), Defendants respectfully request that certain immaterial and prejudicial allegations be stricken and that Plaintiff be ordered to provide a more definite statement to correct the pleading deficiencies.

## FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of a Memorandum of Agreement for Asset Only Purchase (Dkt No. 1-1, Exh. 1 ("the "MOU")) entered into in or around November 2025 for the sale of assets related to the Pure Way water filtration business. (Dkt No. 1-1 ¶ 12). RTC was the owner of the Pure Way trademark and operated as a manufacturer of whole-home water filtration systems, which it had licensed to various distributors. (*Id.*, Exh. 1.) Owners of RTC also owned and operated their own distributorships: MGoBlue operated as Pure Way in North Carolina and Pure Home operated in Florida. (*Id.*) Pursuant to the MOU, Plaintiff agreed to purchase assets belonging to RTC, including the Pure Way trademark, all associated intellectual property, and other operational and digital assets. (*Id.*, Exh. 1 ¶¶ 3-4.) The MOU granted each Individual Distributor a license to use the Pure Way trademark, with all goodwill inuring to Plaintiff's benefit. (*Id.* ¶ 5.)

On March 11, 2026, Plaintiff filed its Complaint in the Court of Common Pleas of Beaufort County, South Carolina, asserting three claims:

(1) declaratory judgment seeking a declaration that MGoBlue and Pure Home were required to sign distributor agreements and their failure to do so breached the MOU;

(2) breach of contract, alleging Defendants failed to sign distributor agreements, developed a competing product using proprietary information, violated the non-compete and non-disparagement provisions, and breached the confidentiality obligations; and

2

(3) defamation, alleging Defendants or their agents made disparaging and/or defamatory comments about Plaintiff and the efficacy of its products via text messages to an unidentified customer on March 2, 2026.

Plaintiff filed a Motion to Seal the Complaint and its exhibits, asserting the MOU was subject to strict confidentiality and disclosure would violate the MOU's confidentiality provision. Defendants intend to oppose the Motion to Seal filed by Plaintiff.

Defendants accepted service of the Complaint on March 13, 2026. On April 6, 2026, Defendants removed the action. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. (Dkt No. 1.) Complete diversity exists between the parties:

- Plaintiff is a citizen of Missouri (incorporation) and South Carolina (principal place of business);

- the Corporate Defendants are citizens of Florida (RTC Management and PureHome) and North Carolina (MGoBlue); and

- the individual Defendants are citizens of Florida (Terwilliger) and North Carolina (Shumay). (*Id*. at ¶¶ 6-7.)

The amount in controversy exceeds $75,000, exclusive of interest and costs. (*Id*. at ¶ 7.)

## LEGAL STANDARD

### A.    Rule 12(b)(2) – Motion to Dismiss based on Lack of Personal Jurisdiction

When a defendant affirmatively raises a personal jurisdiction challenge, the plaintiff bears the burden of demonstrating facts to establish personal jurisdiction—and carries that burden "at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter." *Id.* "Indeed, only when a material jurisdictional fact is disputed and that fact overlaps with a fact that needs to be resolved on the merits by a jury might a court defer its legal ruling on personal jurisdiction to let the jury find the overlapping fact." *Id.* at 267-68 (*citing* Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982) (noting that, "where the jurisdictional facts are intertwined

3

with the facts central to the merits of the dispute," deferring resolution of that factual dispute to a proceeding on the merits "is the better view")).

When, as here, the court is asked to address the personal jurisdiction question by reviewing only the parties' motion, legal memoranda, and the allegations in the complaint, the plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Mylan Labs., Inc. v. Akzo*, N.V., 2 F.3d 56, 62 (4th Cir. 1993) (explaining how courts may consider affidavits from any party when applying the *prima facie* standard). The court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff. *See Combs*, 886 F.2d at 676. Ultimately, however, a plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence. *Id.*

**B.      Rule 12(b)(6) – Motion to Dismiss for Failure to State a Claim**

A complaint cannot survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. Although a court must take as true all of the factual allegations, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555). Under to Federal Rule of Civil Procedure 10(c), "an exhibit to a pleading is a part of the pleading for all purposes." Therefore, courts may consider the complaint in its entirety,

4

including exhibits, when evaluating a motion to dismiss pursuant to Rule 12(b)(6). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

### C.      Rule 12(f) – Motion to Strike

Federal Rule of Civil Procedure 12(f) authorizes courts to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."

### D.      Rule 8(a) – Motion for More Definite Statement

Federal Rule of Civil Procedure 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief. . . ." A motion for a more definite statement under Rule 12(e) is appropriate when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

## ARGUMENTS

### I.      THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DEFENDANTS TERWILLIGER OR SHUMAY.

All three of Plaintiff's claims against Defendants Terwilliger and Shumay, in their individual capacities, must be dismissed because the Court lacks personal jurisdiction over them.

In order to establish personal jurisdiction, "Plaintiff must show (1) that the exercise of jurisdiction is authorized by the South Carolina long-arm statute and (2) that the exercise of personal jurisdiction complies with the constitutional due process requirements." *E.E. by and through Espey v. Eagle's Nest Found.*, 200 F. Supp. 3d 626, 631 (D.S.C. 2016). "South Carolina has interpreted its long-arm statute to extend to the constitutional limits of due process." *Id.* "Thus, the first step is collapsed into the second, and the only inquiry is whether the due process requirements are met." *ESAB Group, Inc. v. Centricut, LLC*, 34 F.Supp.2d 323, 328 (D.S.C. 1999).

"Due process requires that a defendant have sufficient minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

5

justice.'" *Eagle's Nest Found.*, 200 F.Supp.3d at 631 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "This standard can be met in two ways: by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." *Id.* (citations omitted).

The Court can have general jurisdiction over a natural person if that person is "domiciled in" the State or has his principal place of business there. S.C. Code Ann. § 36-2-802 (1962). As set forth in Plaintiff's Complaint, Terwilliger is "a citizen and resident of the State of Florida." (Dkt No. 1-1 at ¶ 5.) He is the managing member of Pure Home which has its principal place of business in Florida. (*Id.* ¶ 3.) Separately, Shumay is "a citizen and resident of the State of North Carolina." (*Id.* ¶ 6.) As managing member of MGoBlue, Shumay's principal place of business is North Carolina. (*Id.* ¶ 2.) Accordingly, this Court does not have general jurisdiction over either defendant as they are not domiciled in nor do they maintain their principal place of business in the state.

Moreover, as to specific jurisdiction, Plaintiff also fails to establish personal jurisdiction. Even though both individuals are managing members of one or more of the Corporate Defendants, as alleged in Plaintiff's Complaint (*see id.*), neither Terwilliger nor Shumay executed the MOU that forms the basis of Plaintiff's claims for declaratory judgment, breach of contract, and seemingly also forms the predicate for Plaintiff's defamation claim (*see, e.g.*, Dkt No. 1-1 at ¶ 29). Instead, Plaintiff's bare jurisdictional allegation as to both individual Defendants—that they, individually, "entered into an agreement with the plaintiff to be performed in whole or in part in the State of South Carolina" (*Id.* at ¶¶ 5-6)—is wrong.

The parties to the MOU are clear from the face of the contract. To begin with, the first sentence of the MOU states that "RTC . . . has agreed to sell certain of its assets to SLWP" and "SLWP … desires to purchase those assets only pursuant to the following terms and conditions . .

6

. .” (Dkt No. 1-1 at Exh. 1, p. 1.) These two “Parties” are defined (and enumerated) as the only Parties to the MOU. In addition, the MOU was executed by Plaintiff, RTC, and the Corporate Defendants. (Dkt No. 1-1, Exh. 1, at p. 6.)

Terwilliger only executed the MOU through “RTC” as “its managing member.” (*Id.*) Likewise, Shumay only signed as “managing member” of MGoBlue. (*Id.*) It is unclear which individual executed the MOU on behalf of Pure Home, but assuming it was its managing member, Terwilliger, (*see* Dkt No. 1-1 at ¶ 5), the signature is made for “Pure Home 365” and the signer was only signing in his or her capacity as “managing member” of that entity. (*Id.*) In other words, nothing in either the paragraphs describing the “Parties” or the signature page indicate that either Terwilliger or Shumay executed the MOU as individual parties. Paragraph 22 of the MOU reinforces this fact: “The signatories to this Agreement represent that they are authorized to and have full authority to sign on behalf of and bind the respective Seller and Individual Distributor.” (Dkt. No. 1-1, Exh. 1 ¶ 22.)

Moreover, throughout the MOU it is clear that the only parties with contractual obligations or rights are the “Buyer” (Plaintiff, SLWP), “Seller” (Defendant, RTC), and certain other corporate parties, defined as the “Individual Distributor(s)” (which include only MGoBlue, Pure Home, and other entities, who are not also parties to this litigation[1]). For these reasons, the MOU's exclusive venue provision (Dkt No. 1-1, Exh. 1, ¶ 21) does not apply to Shumay or Terwilliger. Without any evidence to establish personal jurisdiction over these persons, they must be dismissed pursuant to Rule 12(b)(2), Fed. R. Civ. P.

---

[1] Including Crystal Clear Systems LLC, a limited liability company organized pursuant to the laws of the State of Florida and Updegraph Enterprises LLC, a limited liability company organized pursuant to the laws of the State of Florida. (*See* Dkt No. 1-1, Exhibit 1, at p. 1.)

7

## II.     PLAINTIFF'S BREACH OF CONTRACT CLAIM FAIL AS A MATTER OF LAW.

### A.  Plaintiff has alleged no actual damages.

Under South Carolina law, which governs the MOU, (Dkt No. 1-1, Exh. 1, ¶ 21), a plaintiff asserting a claim for breach of contract must plead and prove: (1) a binding contract entered into by the parties; (2) the defendants' breach or unjustifiable failure to perform the contract; and (3) damages to the plaintiff proximately resulting from that breach. *Fuller v. Eastern Fire & Casualty Insurance Co.*, 240 S.C. 75, 124 S.E.2d 602, 610 (1962). The failure to adequately plead any element of a breach of contract claim warrants dismissal under Rule 12(b)(6). Plaintiff fails to plead actual damages in two independently dispositive respects: Plaintiff has not pled damages with the specificity required to state a plausible claim, and even if its allegations are construed as a claim for lost profits, they are insufficient under the heightened standard.

### 1.  Plaintiff's alleged damages are insufficient to survive dismissal because they are speculative and hypothetical.

Due to the clearly speculative and hypothetical nature of Plaintiff's damages allegations, Plaintiff's Complaint fails to plead the essential elements of a breach of contract claim. Damages in a contract action are properly measured as the loss actually suffered by the plaintiff as the result of a defendant's breach. *S.C. Fin. Corp. of Anderson v. W. Side Fin. Co.*, 236 S.C. 109, 122, 113 S.E.2d 329, 335 (1960). Here, Plaintiff's sole quantified damages allegation is that it "*will incur* a loss of at least $289,958.00 in gross product purchases this year and every year thereafter by reason of these defendants' failures and refusal to become distributors as agreed." (Dkt No. 1-1, ¶ 26 (emphasis added).) Plaintiff does not plead it has *actually suffered* any loss; rather, it pleads a *projected* dollar amount (of *gross,* not *net*, revenues), based on anticipated product purchases that Defendants purportedly would have made had they signed a distributor agreement. (*Id.*)

8

But South Carolina law requires that damages in a contract action be proved with reasonable certainty and courts regularly dismiss claims where damages rest on mere speculation or conjecture. *See Drews Co., Inc. v. Ledwith-Wolf Assocs., Inc.*, 296 S.C. 207, 371 S.E.2d 532 (1988). Speculative damages are damages that depend upon contingent, conjectural, or improbable future developments. *56 Leinbach Inv., LLC v. Magnolia Paradigm, Inc.*, 411 S.C. 466, 478, 769 S.E.2d 242, 249 (2014). Courts generally find damages must be determined with reasonable certainty, and a plaintiff cannot recover damages that are uncertain, contingent, or speculative. *Id*. Where future injury is only merely possible, rather than probable, or where the amount is not reasonably certain, the plaintiff *cannot* recover. *Id*. (emphasis added).

Here, Plaintiff's alleged damages fall squarely within this prohibition. Such speculative and hypothetical damages are insufficient to survive a Rule 12(b)(6) motion to dismiss. The figure of $289,958.00 is not tethered to any actual, realized damages that Plaintiff has incurred and is not a measure of any loss Plaintiff has actually sustained. It represents, at most, a projection of future gross product purchases—not revenue or profit—that Plaintiff expected to receive. This is not a cognizable injury-in-fact. Rather it is precisely the type of damages that "depend upon future developments which are contingent, conjectural, or improbable" and are therefore unrecoverable as a matter of law. *56 Leinbach Invs., LLC*, 411 S.C. at 478, 769 S.E.2d at 249.

The Court does not need to wait until discovery commences to decide if this amount is actual or speculative because the plain language of Plaintiff's allegations make clear these amounts have not actually been incurred. Plaintiff alleges it "*will incur* a loss *of at least* $289,958.00 in gross product purchases *this year and every year thereafter*" as a result of the Defendants' alleged misconduct. (Dkt. No. 1-1, ¶ 26 (emphasis added).) By acknowledging these are future damages, and not actual losses, repleading will not save Plaintiff's breach of contract claim from dismissal.

9

Although Plaintiff's Complaint also makes passing reference to "actual and consequential damages" for other alleged breaches, the allegations are conclusory, lacking any factual content whatsoever. Plaintiff identifies no specific actual damages it has suffered, no quantified losses beyond the hypothetical $289,958.00 figure, and no factual basis from which the Court could reasonably infer the existence of cognizable damages. Such bare, conclusory allegations are the type of "[t]hreadbare recitals" that cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

### 2. Even if Plaintiff's alleged damages are construed to include future lost profits, its allegations are insufficient under South Carolina law.

Even affording Plaintiff the most generous reading of its Complaint possible, the $289,958.00 amount alleged by Plaintiff as its "damages," can only be understood as a claim for lost profits—specifically, the amount Plaintiff contends it would have earned from Defendants' future business had they signed distributor agreements; which it acknowledges they did not. (Dkt No. 1-1, ¶ 16). But a claim for lost profits carries a heightened burden under South Carolina law, and, here, Plaintiff's allegations fall far short of that heightened legal standard.

While lost profits are a "recognized as a species of consequential damages" in South Carolina, they are recoverable only when three requirements are satisfied. *John D. Hollingsworth on Wheels, Inc. v. Arkon Corp.*, 279 S.C. 183, 186, 305 S.E. 2d 71, 73 (1983). First, the profits must have been prevented or lost "as a natural consequence of" the breach of contract. *Drews Co.*, 296 S.C. at 213, 371 S.E.2d at 535. Second, the damages must have been "reasonably . . . within the contemplation of the parties at the time the contract was made as a probable result of the breach of it." *Id.* (quoting *National Tire & Rubber Co. v. Hoover*, 128 S.C. 344, 348, 122 S.E. 858, 859 (1924)). Third, and critically here, lost profits must be "established with reasonable certainty, for recovery cannot be had for profits that are conjectural or speculative." *Id.* (quoting *S.C. Finance Corp. v. West Side Finance Co.*, 236 S.C. 109, 122, 113 S.E.2d 329, 336 (1960)). "The proof must

10

pass the realm of conjecture, speculation, or opinion not founded on facts, and must consist of actual facts for which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn." *Drews Co.*, 296 S.C. at 213-14, 371 S.E.2d at 536.

Furthermore, the term "profits" itself is defined in this context as "the net pecuniary gain from a transaction, the gross pecuniary gains diminished by the costs of obtaining them." *Drews Co., 296 S.C.* at 210, 371 S.E.2d at 534 (quoting Restatement of Contracts § 331, Comment B (1932)); *see also Mali v. Odom*, 295 S.C. 78, 83, 367 S.E.2d 166, 169 (Ct. App. 1988) (defining "profits" as "the net income over expenditures during a given period"). Plaintiff claims the actions of Defendants are causing "further damages in the form of substantial *loss of revenue*." (Dkt No. 1-1, ¶ 26) (emphasis added). This distinction between gross revenue and net profit is fundamental to any lost profits analysis, because a plaintiff who alleges only gross figures without accounting for the costs of earning that revenue has not alleged cognizable "lost profits" at all.

Plaintiff's Complaint fails each of these requirements. The $289,958.00 figure is described as a loss in "gross product purchases"—a measure of revenue, *not* Plaintiff's anticipated profit. (Dkt No. 1-1, ¶ 26). Plaintiff fails to allege what its historical profit margin(s) on such purchases were, what its anticipated profit margin(s) on such product sales to Defendants would have been, what costs it would have incurred in fulfilling those orders, or how the gross revenue figure translates into any cognizable net profit. The Complaint fails to allege which one of the five defendants would have purchased what amount of products and when. Is the $289,958.00 alleged gross product purchases equally split among the five defendants? Or would one or more of the five defendants have been expected to purchase the products on a going forward basis? All these glaring deficiencies are dispositive of Defendants' motion to dismiss.

11

In *Drews Co.*, the South Carolina Supreme Court reversed a lost profits award where the plaintiff relied on gross profit figures from its first year of operation but "did not supplement his testimony with corresponding figures for overhead or operating expenditures, but only with [the] testimony that he 'would expect at least a third of that [gross figure] to be 'net profit.'" 296 S.C. at 214, 371 S.E.2d at 536. The Court held these "expectations, unsupported by any particular standard or fixed method of establishing net profits, were wholly insufficient to provide . . . a basis for calculating profits lost with reasonable certainty." *Id.* If actual gross revenue figures from an operating business were insufficient in *Drews Co.*, then a hypothetical gross revenue projection from a business that never even came into existence, as Plaintiff alleges, is inadequate.

Further, Plaintiff alleges no foundation to establish the value of its alleged damage. In *Mali v. Odom*, the South Carolina Court of Appeals held that estimates of anticipated monthly income and expenses for a business were speculative and improperly admitted because they were "offered . . . without reference to any operational history of the [business] or any particular standard or fixed method for estimating future income and expenses for a business of that kind." 295 S.C. at 83, 367 S.E.2d at 169. The court emphasized that lost profits may be established only "if there is a certain standard or fixed method by which profits sought to be recovered may be estimated and determined with a fair degree of accuracy. *Id.* (quoting *S.C. Finance Corp. v. West Side Finance Co.*, 236 S.C. at 123, 113 S.E.2d at 336). Here, Plaintiff alleges no operational history because it cannot. It is a business that came into existence at or around the time of the MOU. Further, Plaintiff alleged no methodology, no standard, and no fixed method by which its claimed $289,958.00 figure was derived. It is a bare number, untethered to any factual foundation and is insufficient to state actual damages to support a breach of contract claim under South Carolina law.

12

The contrast with cases where South Carolina courts have permitted lost profits further demonstrates the inadequacy of Plaintiff's allegations. In *Hollingsworth on Wheels*, for example, the court rejected a buyer's speculative projections of over $2,000,000 in lost profits premised on anticipated "economies of scale" that were never promised in the contract. The court only awarded lost profits of $248,510.00 based on the buyer's actual profit margin of three to four percent during the damage period and its calculation of unrealized production directly prevented by the breach. 279 S.C. at 187, 305 S.E. 2d at 73. The critical distinction is that, in *Hollingsworth*, the plaintiff supplied actual, demonstrated profit margins and a concrete calculation tied to production directly prevented by the breach. Here, Plaintiff has no numbers to rely upon because the distributor agreement has never been in effect. In addition, the terms of the MOU are specific enough to show that no product purchases or profit margins would have been guaranteed if the distributor agreements had been in effect. (*See generally* Dkt No. 1-1, Exh. 1.)

Plaintiff's allegations are far more akin to the speculative claims that South Carolina courts have consistently rejected. Plaintiff offers nothing more than an unsubstantiated projection of what Defendants *might* have purchased in the future. There is no allegation of historical purchasing patterns by Defendants from which one could infer the reasonableness of the projection. There is no explanation of the methodology by which the figure was calculated. There is no indication of whether any one or more of the five named Defendants would have purchased products and, if all of them, in what amounts each. And the Complaint's assertion that this loss with recur "every year thereafter" in perpetuity underscores the speculative and conjectural nature of Plaintiff's claim. It is premised not on demonstrated losses, but on an assumption that Defendants would have continued to purchase products at a speculative level on an alleged consistent and identical basis indefinitely. The MOU does not set any kind of purchase requirements, thresholds, or ranges. It is,

13

therefore, as equally possible that the Defendants would have purchased $289,958.00 in gross product purchases each year as it is that they would have purchased $0.[2]

 "Speculative damages that depend upon future developments which are contingent, conjectural, or improbable," and "where future injury is only merely possible, rather than probable, or where the amount is speculative rather than reasonably certain" bars a plaintiff's recovery entirely. *56 Leinbach Invs., LLC*, 411 S.C. at 478, 769 S.E.2d at 249. Plaintiff's bare allegation of gross revenues, untethered to any factual foundation, and allegedly charged against named Defendants, is the very definition of speculative damages that cannot survive a motion to dismiss.

Because Plaintiff has failed to plead the essential element of damages—whether viewed as a general failure of specificity or as an inadequate claim for lost profits—Plaintiff's Second Cause of Action for breach of contract should be dismissed pursuant to Rule 12(b)(6).

### B. Plaintiff's breach of contract claim must be dismissed as to Defendants Terwilliger and Shumay because they are not parties to the MOU.

The allegations in Plaintiff's Complaint are contradictory, and therefore unclear, as to whether Plaintiff asserts its contract claim against the individual Defendants and the Corporate Defendants, or against the Corporate Defendants only. For example, the Second Cause of Action incorporates all prior allegations by reference and alleges: "The defendants have breached the Memorandum of Agreement" without specifying which Defendants are alleged to have breached the MOU. (Dkt No. 1-1, ¶¶ 22-23.) This ambiguity pervades the Complaint. The caption names all

---

[2] The MOU does not include termination notices for the contemplated distributor agreements. In South Carolina, "[w]here the parties to a contract express no period for its duration, and no definite time can be implied from the nature of the contract or from the circumstances surrounding them, it would be unreasonable to impute to the parties an intention to make a contract binding themselves perpetually. . . [T]he only reasonable intention that can be imputed on the parties is that the contract may be terminated by either, on giving reasonable notice of his intention to the other." *Carolina Cable Network v. Alert Cable TV, Inc.*, 316 S.C. 98, 102, 447 S.E.2d 199, 201 (1994) (citation omitted). Accordingly, absent an express provision mandating a period, courts should interpret the agreement to be at-will. Therefore, Defendants could have terminated the anticipated distribution arrangement at any time with no product purchases at all.

five Defendants, but the substantive allegations regarding the MOU indicate that only certain Defendants are parties to it. (*See e.g.*, *id.* at ¶¶ 23, 24, 26 (asserting "RTC, MGo and PH" breached the agreement); ¶¶ 25, 27 (asserting "the defendants" breached the agreement, and claiming Plaintiff is entitled to damages "from the defendants' breaches").)

To the extent the Complaint can be read to assert a contract claim against all Defendants, that claim must be dismissed because neither Terwilliger nor Shumay is a party to the MOU. As previously stated, the MOU identifies the parties to the contract as SLWP, RTC, MGoBlue, and Pure Home. (Dkt No. 1-1, Exh. 1 at p. 1.) Moreover, Terwilliger and Shumay are not signatories to the MOU in their individual capacities. Rather, they signed as representatives of their respective LLCs—Terwilliger as the managing member of RTC and Shumay as the managing member of MGoBlue. (*Id*. at p. 6; *see also id.* at ¶ 22.)

It is black-letter law that a breach of contract claim can only be maintained against a party to the contract. *See Bob Hammond Const. Co., Inc. v. Banks Const. Co.*, 312 S.C. 422, 424, 440 S.E.2d 890, 891 ("[O]ne not in privity of contract with another cannot maintain an action against him in breach of contract, and any damage resulting from the breach of a contract between the defendant and a third party is not, as such, recoverably by the plaintiff."). Therefore, a non-party cannot be held liable for its breach absent an alternative theory of liability, which is not alleged. Because neither Terwilliger nor Shumay is an individual party to the MOU, any breach of contract claim against them in their individual capacities necessarily fails as a matter of law.

Accordingly, to the extent Plaintiff's Second Cause of Action for breach of contract is asserted against Terwilliger and Shumay, it should be dismissed against them with prejudice.

15

### III.   PLAINTIFF'S DECLARATORY JUDGMENT CLAIM FAILS TO PRESENT A JUSTICIABLE CONTROVERSY AND IS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM.

Plaintiff's First Cause of Action seeks declaratory relief relating to the parties' obligations under the MOU. (Dkt No. 1-1, ¶¶ 18-20.) The declaratory relief Plaintiff seeks—declarations that MGoBlue and Pure Home were required to sign distributor agreements and that their failure to do so constitutes a breach by all Defendants—is not only self-contradictory (seemingly against MGoBlue and Pure Home only, but then also alleging "these defendants" have no rights because of the breaches of MGoBlue and/or Pure Home only (*id.* at ¶ 20(C), (D), and (E))); it is also entirely duplicative of Plaintiff's Second Cause of Action for breach of contract. (*Compare* Dkt No. 1-1, ¶ 20.A-E *with id*. ¶¶ 23-24.) Therefore, it should be dismissed.

In *Williams Furniture Corp. v. Southern Coatings & Chemicals Co.*, 216 S.C. 1, 56 S.E.2d 576 (1949), the state Supreme Court ruled the statutory remedy of a declaratory judgment is inappropriate to try a controversy by piecemeal, or to try particular issues without settling the entire controversy. *Id.* at 7, 56 S.E.2d at 578 ("Declaratory relief should not be accorded 'to try a controversy by piecemeal, or to try particular issues without settling the entire controversy.' … Nor should such relief be granted when the remedy is invoked merely to try issues or determine the validity of defenses in pending cases."). Here, because the declaratory judgment claim merely restates the contract claim, with the contract claim addressing the claim in its fullest, as opposed to the piecemeal nature of Plaintiff's declaratory judgment remedy, it should be dismissed.

Moreover, because Plaintiff has no actual damages, its declaratory judgment claim also fails for lack of an essential element. "[A] declaratory judgment action does require an actual controversy; the party seeking the declaratory judgment must 'show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality

16

to warrant the issuance of a declaratory judgment." *Solaris, Inc. v. American Southern Ins. Co.*, No. 2:20-v-444-BHH, 2022 WL 19406809, at *4 (D.S.C. Sept. 29, 2022).

## IV.     PLAINTIFF'S DEFAMATION CLAIM FAILS TO PLEAD THE REQUIRED ELEMENTS.

### A.  Plaintiff fails to allege facts to establish what jurisdictional tort law applies.

As a threshold matter, the Complaint's lack of specificity concerning its defamation claim creates an antecedent problem: it is impossible to determine which jurisdiction's tort law governs the defamation claim because of the lack of factual detail regarding the defamatory statement itself.

According to the Complaint, the alleged defamatory statements consist of one or more text messages between an unidentified defendant and an unidentified "customer" of the Plaintiff. (Dkt No. 1-1 at ¶¶ 30-31.) But the Complaint does not allege which one of the Defendants and/or their agents made the defamatory statement. The Complaint does not allege where Plaintiff's customer who received the alleged defamatory statements was located when the text messages were received and read—that is, where the allegedly defamatory statements were published. It does not allege where one or more of the Defendants and/or their agents were when they made the alleged defamatory statements. These omissions are critical because the tort of defamation is governed by the law of the state where publication occurs. *See* Restatement (Second) of Conflict of Laws § 141 (1971) (applying the law of the state where the defamatory communication is published).

Here, Defendants are citizens of and/or incorporated in North Carolina and Florida, and the Plaintiff is organized in Missouri with its principal place of business in South Carolina. (*See* Dkt No. 1-1, ¶¶ 1-6.) The recipient of the text messages, Plaintiff's customer, could reside in and conduct business in any of the states where the parties are located or elsewhere entirely, and further, could have been travelling anywhere at the time the text message was received. Without knowing where the publication occurred, neither this Court nor the Defendants can determine whether the

17

defamation law of South Carolina, North Carolina, Florida, or some other jurisdiction applies to the defamation claim in issue. This fundamental deficiency alone renders the defamation claim fatally vague and warrants dismissal, or in the alternative, amendment for the reasons stated below.

### B. Plaintiff's defamation claim is a disguised replead contract claim.

Moreover, the Complaint reveals that Plaintiff's so-called defamation claim is, in substance, nothing more than a breach of contract claim improperly recast as a tort. (Dkt No. 1-1, ¶ 29.) The Third Cause of Action for Defamation begins by incorporating and quoting the Non-Disparagement provision set forth in Paragraph 17 of the MOU, which provides "the Parties agree that they will not make or cause to be made any statements (oral or written) that disparage the other party including statements concerning reputation or business." (*Id.* at ¶ 29 (quoting Exh. 1 ¶ 17).) By attempting to anchor a defamation claim in the contractual non-disparagement obligation, Plaintiff has effectively conceded that the root of its claim sounds in contract, not in tort.

But a claim for breach of contractual non-disparagement provisions and a common law defamation claim are fundamentally distinct causes of action. Further, non-disparagement does not necessarily equate to defamation as a matter of law. Whereas a non-disparagement clause is a private contractual undertaking between the parties, the breach of which gives rise to a contract remedy measured by the terms of the agreement, defamation, by contrast, is a tort imposing liability for the publication of a false and defamatory statement to a third party, with its own distinct elements, privileges, and damages framework. Plaintiff cannot transform a breach of a contractual non-disparagement covenant into a tort claim for defamation simply by labeling it as such; and also failing to plead the necessary elements of a tort claim for defamation under any state's law. To the extent Plaintiff's claim rests on the alleged violation of the MOU's non-disparagement provision, that claim is properly cognizable—if at all—as a breach of contract, which Plaintiff has

18

already pled as its Second Cause of Action. Plaintiff's attempt to disguise a contract claim as a defamation claim cannot survive dismissal. It should either be dismissed for failure to state a claim or dismissed because it is already stated as its Second Cause of Action.

Notably, the non-disparagement provision is limited in scope to "the Parties" to the MOU. (Dkt No. 1-1, Exh. 1, ¶ 17.) Terwilliger and Shumay are not parties to the MOU. Accordingly, even if Plaintiff's defamation claim were properly pled as a contract claim, it could not be maintained against the individual Defendants for the reasons set forth above.

### C. Plaintiff fails to state a defamation claim.

However, the Plaintiff has attempted to plead the claim as one of tort and, for the purposes of Defendants' Motion, it is analyzed as such. Accordingly, the elements of defamation are not met, and the claim should be dismissed pursuant to Rule 12(b)(6).

Without knowing what jurisdiction's law applies, Defendants look to the Restatement for elements.[3] Here, the Complaint does not adequately plead any of the four elements required to create liability for defamation under the Restatement (Second) of Torts § 558. Those elements are: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either

---

[3] Given the jurisdictional problem, Plaintiff's defamation claim is analyzed under the elements outlined in the Restatement (Second) of Torts. The states of citizenship for all parties in this case span Florida, Missouri, North Carolina, and South Carolina. Just these states alone demonstrate significant variances in defamation law. For example, in North Carolina, to establish a cause of action for the tort of defamation, "a plaintiff must show that the defendant (1) caused the injury to the plaintiff (2) by making false, defamatory statements (3) of or concerning the plaintiff (4) that were published to a third person." *Bouvier v. Porter*, 386 N.C. 1, 10, 900 S.E.2d 838, 846 (2024). In South Carolina, however, the elements of a cause of action for defamation include: (1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party, (3) fault on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Boone v. Sunbelt Newspapers, Inc.*, 347 S.C. 571, 580, 556 S.E.2d 732, 737 (Ct. App. 2001). Such variances in the law make it impractical and unreasonable for the analysis to cover all potential jurisdictions, when the four jurisdictions previously mentioned may have no bearing on or relation to the location of the recipient of the alleged text message. Accordingly, the Restatement (Second) of Torts is used for purposes of this Motion.

19

actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Restatement (Second) of Torts § 558 (1977). The Complaint fails as to each.

### 1. Plaintiff fails to allege a false and defamatory statement.

The first element of a defamation claim requires the plaintiff to allege a specific "false and defamatory statement concerning another." Restatement (Second) of Torts § 558(a). This requires the plaintiff to identify the actual content of the statement at issue so that the court may determine, as a threshold matter, whether it is capable of conveying a defamatory meaning. *See, e.g., Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983) (applying § 558 and holding the "form of the statement is not so important so long as the defamatory meaning is conveyed"). A plaintiff who does not set forth the allegedly defamatory language—even in substance—deprives both the court and the defendant of the ability to evaluate the claim.

Here, the Complaint only alleges Defendants made "*disparaging* comments concerning the plaintiff and the efficacy of its products." (Dkt No. 1-1, ¶ 30 (emphasis added).) The Complaint later alleges these "disparaging comments" (*id.*) were also "defamatory" (*id.* at ¶ 33). However, the Complaint does not recite, quote, or paraphrase any specific statement made by any Defendant. The Complaint also does not describe the substance of the comments or explain how they were false and/or defamatory (as opposed to merely disparaging). Courts have held that "while a plaintiff [is] not required to list the alleged defamatory statements verbatim, [it has] to at least plead the content of the alleged communications, when they were made, the context in which they were made, or by and to whom they were made" to satisfy § 558(a). *U.S. Ex rel. Smith v. Yale University*, 415 F.Supp.2d 58, 108 (D. Conn. 2006); *Doe v. Salisbury University*, 123 F.Supp.3d 748, 757 (D. Md. 2015) ("To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement") (citing *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172

20

F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (unpublished table decision)). Plaintiff's Complaint suffers from this fatal deficiency in that it provides no context whatsoever from which the Court could assess whether the alleged statements are even capable of defamatory meaning.

Moreover, the Complaint fails to identify who made the statements, attributing them to "defendants and/or their agents"—an allegation encompassing five separate defendants and an indeterminate number of unnamed agents. (Dkt. No. 1-1, ¶ 30.) Courts have consistently held that a defamation claim fails for lack of specificity when it does not identify which defendant made the alleged defamatory statements. *See Shibursky v. International Business Machines Corp.*, 820 F.Supp. 1169, 1181 (D. Minn. 1993) (defamation claim failed because it "allege[d] nothing more than that 'unspecified defendants made unspecified statements concerning plaintiff to unspecified third parties'"); *Phelps v. Powers*, 5 F.Supp.3d 1036, 1045 (S.D. Iowa 2013) (allegations insufficient to state a defamation claim where plaintiff "failed to identify the speaker, the content of the allegedly defamatory statements, or their recipient"); *See also State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F.Supp.35 536, 565 (D. Md. 2019) ("pleadings in a defamation case must still be sufficiently detailed to enable a defendant to appropriately respond"). The disjunctive "and/or" phrasing employed by Plaintiff renders it impossible for any individual Defendant to determine whether the claim is directed at him or it. Further, it is impossible for all five Defendants to have defamed Plaintiff through a single text message exchange with one of Plaintiff's customers, as alleged.

### 2. Plaintiff fails to allege an unprivileged publication to a third party.

The second element requires "an unprivileged publication to a third party." Restatement (Second) of Torts § 558(b). "Publication" in the defamation context is a term of art which requires that "the defamatory matter be communicated to a third person intentionally or by negligent act."

21

Restatement (Second) of Torts § 577(1); *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 21 (1st Cir. 2018) (applying §§ 558 and 577). *See also Lin v. TipRanks, Ltd.*, 19 F.4th 28, 35-36 (1st Cir. 2021) (liability for defamation "only occurs where the defamatory material is read and understood by a third party"); *Kissinger-Stankevitz v. Town of Tappahannock*, 750 F.Supp.3d 590, 637 (E.D. Va. 2024) ("The element of publication is satisfied if the defamatory statement is 'communicated to a third party so as to be heard and understood by such person.'").

Plaintiff's Complaint identifies the recipient of the alleged text messages only as "the plaintiff's customer" and "a concerned customer" without naming, describing, or otherwise identifying any individual. (Dkt No. 1-1, ¶¶ 30-31.) But courts across the country applying § 558 have dismissed claims for precisely this failure. In *Vreven v. American Ass'n of Retired Persons*, the court dismissed a defamation claim where the plaintiff alleged that the defendant made statements "to 'others at [the organization] and, upon information and belief, to people outside of [the organization],'" finding this description "vague and amorphous" because it "did not adequately identif[y] third parties, or 'listeners.'" 604 F.Supp.2d 9, 15 (D.D.C. 2009). Similarly, in *In Touch Concepts Inc. v. Cellco Partnership*, the court dismissed because "it remain[ed] unclear who affiliated with [defendant] made such statements" and "*to whom* such statements were made." 949 F.Supp.2d 447, 484 (S.D.N.Y. 2013); *see also Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F.Supp.2d 730, 738 (S.D.N.Y. 2011) (plaintiff did not identify which individuals made the defamatory statements, or adequately specify to whom the purported statements were made); *see also Campbell v. International Paper Co.*, No. 3:12-cv-03042-JFA, 2013 WL 1874850 (D.S.C. May 3, 2013) ("[n]owhere in the complaint is it alleged to whom the defendants make the statements").

22

Plaintiff's identification of the alleged publishee as an unnamed "customer" is no more specific than the allegations rejected in these cases. Accordingly, Plaintiff has failed to plead this element, as Defendants are entitled to know who received the alleged defamatory statement(s).

### 3. Plaintiff fails to allege fault on the part of the publisher.

The third element requires "fault amounting to at least negligence on the part of the publisher." Restatement (Second) of Torts § 558(c). Here, the Complaint simply alleges in conclusory fashion that "the statements were published with actual knowledge of their falsity and/or with reckless disregard for their truth or falsity." (Dkt No. 1-1, ¶ 33.) But this is a bare recital of the legal standard devoid of any factual support.

Plaintiff's Complaint does not allege any facts from which the Court could infer that any specific Defendant knew any specific statement to be false or acted with reckless disregard for the truth. Without knowing what was said, by whom, or in what context, it is impossible to assess whether the publisher acted with the requisite fault. The Middle District of Florida dismissed a defamation claim under § 558 where a plaintiff pled facts that it argued "implied negligence," holding that the plaintiff's allegations, "without more," were "insufficient to plead fault as required to state a claim for defamation." *e-ventures Worldwide, LLC v. Google, Inc.*, 188 F.Supp.3d 1265, 1278 (M.D. Fla. 2016). Similarly, in *Cunningham v. City of New Orleans*, the court held, citing §§ 558 and 559, that a plaintiff's "conclusory statements without any factual support" "fail[ed] to establish the elements of defamation" and dismissed the plaintiff's claims. 336 So.3d 977, 994 (La. 2021). Plaintiff's Complaint suffers from the same deficiency: it states the legal standard for fault without alleging any facts to support it.

#### 4. Plaintiff fails to allege actionability or specific harm.

The fourth element requires "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Restatement (Second) of Torts § 558(d). A statement is actionable irrespective of special harm—that is, actionable *per se*—only if it falls within certain categories. *See* Restatement (Second) of Torts §§ 569-574. If it does not, the plaintiff must allege "special harm." Restatement (Second) of Torts §§ 558(d), 575, 622, 622A.

The Complaint states in conclusory fashion that "[t]he plaintiff suffered actual damages" and it "has suffered special damages, and its reputation throughout the water treatment community has been called into disrepute." (Dkt No. 1-1, ¶¶ 32, 35.) These are bare legal conclusions devoid of any factual content. Plaintiff does not identify any specific harm, lost business, lost customers, or quantifiable injury attributable to the alleged defamatory statements. Without knowing what was said, it is impossible to determine whether the statements fall into a category that is actionable *per se*. Likewise, without any specific economic loss, Plaintiff has not pled the special harm that would otherwise be required. *See Wichansky v. Zowine*, 150 F.Supp.3d 1055, 1074 (D. Ariz. 2015) ("[b]ecause [plaintiff] has not shown either damages or slander per se, he has not stated a viable claim for defamation"); *see also Fountain v. First Reliance Bank*, 398 S.C. 434, 442, 730 S.E.2d 305, 309 (Ct. App. 2012) (requiring plaintiff to establish special damages where statement is not defamatory per se); *Cummings v. Lumbee Tribe of N.C.*, 590 F.Supp. 769, 774 (E.D.N.C. 2008) ("When stating a claim for defamation *per quod*, a plaintiff must plead and prove special damages."); *Moore v. Cox*, 341 F.Supp.2d 570, 574 (M.D.N.C. 2004) ("To prove special damages…, a plaintiff's allegations must evidence a pecuniary loss[.]").

Because insufficient facts are alleged in the Complaint from which this Court and Defendants could know what jurisdiction's law applies to Plaintiff's defamation claim and Plaintiff

has failed to adequately plead any of the elements required under Restatement (Second) of Torts § 558, the Third Cause of Action for defamation should be dismissed.

Additionally, even assuming arguendo that the defamation claim could survive scrutiny, the Complaint fails to adequately allege that Terwilliger or Shumay personally made the alleged defamatory statements. The Complaint attributes the statements to "defendants and/or their agents" (Dkt No. 1-1, ¶ 30), without distinguishing between the Corporate Defendants and the individuals. Because defamation is a personal tort requiring individual culpable conduct, the blanket attribution to all "defendants" is insufficient to state a claim against any specific defendant. This principle applies with equal force to defamation claims, which require showing that a specific defendant made the defamatory statement.

## V.     IF PLAINTIFF'S CLAIMS SURVIVE DISMISSAL, PARAGRAPHS 9, 10, AND 11 OF PLAINTIFF'S COMPLAINT SHOULD BE STRICKEN PURSUANT TO RULE 12(F) AS IMMATERIAL, IMPERTINENT, AND PREJUDICIAL.

Should the Court decline to dismiss the Complaint in whole or in part, against one or more Defendants, then Defendants respectfully move, in the alternative, to strike Paragraphs 9, 10, and 11 of the Complaint pursuant to Rule 12(f) as immaterial, impertinent, and prejudicial.

Paragraph 9 of the Complaint alleges that "in 2025 RTC had developed financial difficulties resulting from defects in its products" and that "RTC and [Shumay] were facing potential claims from its distributors and others of having used unfair and deceptive trade practices and having engaged in fraudulent advertising in connection with its product testing and business practices." (Dkt No. 1-1, ¶ 9.) Paragraph 10 further alleges that one of RTC's distributors "developed a 'fix' for the product defect and, at its own expense, implemented a program to replace defective components in its customers system with a properly functioning component." (*Id.* at ¶ 10.) Paragraph 11 alleges that Shumay and RTC "proposed a sale of the Pure Way trademark and

25

the assets of RTC . . . in exchange for LCWS's acknowledgment that the fraudulent testing results were the fault of a RTC supplier and that [Shumay] and RTC were unaware that their representations were fraudulent." (*Id.* at ¶ 11.) These paragraphs should be stricken for several reasons if they are not dismissed outright as argued above.

In *Rivera v. Patterson*, No. 8:23-cv-01107-SAL-JDA, 2023 WL 12100560, at *1 (D.S.C. May 2, 2023), this Court recognized that "a motion to strike is granted only when the allegations in question are unrelated to the case or controversy or cause 'significant prejudice to one or more of the parties to the action.'" (Quoting *Yin v. Columbia Int'l Univ.*, No. 3:15-cv-03656-JMC, 2016 WL 5349090, at *4 (D.S.C. Sept. 26, 2016) (internal quotation marks omitted); *see also Verfuerth v. Orion Energy Sys., Inc.*, 65 F. Supp. 3d 640, 652 (E.D. Wisc. 2014) (striking background facts as prejudicial because of the expense to the Defendant in paying an attorney to respond to them); *Coleman v. McMillan*, No. 1:12-1916-JFA-SVH, 2014 WL 1249290, at *3 (D.S.C. Mar. 26, 2014) (explaining that striking material is appropriate when "its presence in the pleading throughout the proceeding will be prejudicial to the moving party") (internal quotation marks omitted).

First, Defendants intend to deny the factual assertions contained in Paragraphs 9, 10, and 11, including the allegations of product defects, financial difficulties, unfair trade practices, fraudulent advertising, and fraudulent testing results. Because these contested allegations are presented as established facts rather than claims to be proven, and their inclusion in the Complaint is improper. Although a Rule 12(f) motion is not intended to decide disputed issues of law or fact, *Rivera v. Patterson*, 2023 WL 12100560, at *2, here, the allegations are not only not true, as set forth below, they are immaterial and irrelevant to the claims asserted by Plaintiff and, their presence in the pleading throughout the proceeding will be prejudicial to Defendants.

26

Second, the allegations are immaterial and irrelevant to the claims asserted. Plaintiff's causes of action are for declaratory judgment, breach of contract, and defamation. None of these claims require proof of alleged product defects, financial difficulties, or purported fraudulent conduct by Defendants. The allegations in Paragraphs 9, 10, and 11 relate to the background events that preceded the execution of the Contract and have no bearing on whether Defendants breached the Contract or defamed Plaintiff. They are, therefore, not only untrue but also wholly unrelated to any element of any cause of action pled. *See Erby v. Webster Univ.*, No. 3:13-518-JFA-SVH, 2013 WL 4586018, at \*2 (D.S.C. Aug. 28, 2013) (defining "impertinent matter" as "any allegation not responsive or relevant to the issues involved in the action.").

Third, the allegations are prejudicial to Defendants. Paragraphs 9, 10, and 11 contain inflammatory language, including references to "financial difficulties," "unfair and deceptive trade practices," "fraudulent advertising," and "fraudulent testing results," none of which form the basis of any element or cause of action in Plaintiff's Complaint. Given the pleading deficiencies of each and every one of Plaintiff's stated claims against all or any one of the named Defendants, it is clear that such language is calculated to cast Defendants in a negative light and to prejudice the trier of fact against them—even though their claims are subject to dismissal and, if they survive dismissal, are likely to be disposed of on summary judgment. These serious accusations have no connection to the actual claims in this case and serve no purpose other than to impugn Defendants' character and business reputation. The prejudicial impact of these allegations substantially outweighs any conceivable relevance, and their inclusion in the Complaint will unfairly color the proceedings.

Accordingly, Paragraphs 9, 10, and 11 should be stricken from the Complaint pursuant to Rule 12(f) if any part of Plaintiff's claims against any one of the five named Defendants survive dismissal pursuant to Rule 12(b)(2) and/or 12(b)(6).

27

## VI.  IN THE ALTERNATIVE TO DISMISSAL, PLAINTIFF SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT PURSUANT TO RULE 12(E).

Further, should the Court decline to dismiss Plaintiff's claims under Rule 12(b)(6), Defendants respectfully request, in the alternative, that the Court order Plaintiff to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). As detailed above, Plaintiff's Complaint is replete with deficiencies that render it impossible for Defendants to adequately frame a defense to Plaintiff's claims.

With respect to Plaintiff's declaratory judgment and breach of contract claims, the Complaint fails to articulate which Defendants are parties to the claims and, further, fail to state the nature and amount of Plaintiff's actual damages with specificity. As set forth in Section II.A, the sole quantified damages allegation—$289,958.00 in projected gross product purchases—is untethered to any actual loss, profit margin, or cognizable methodology. Plaintiff does not allege whether it seeks actual or consequential damages, or lost profits; what period its damages purportedly cover; how the figure was calculated; or against which Defendant that amount is sought. Defendants cannot assess the scope of Plaintiff's alleged injury, evaluate potential defenses relating to mitigation or causation, or contest the damages. Defendants are entitled to know which one of them are parties to the claims as well as the nature of the damages they must defend.

With respect to Plaintiff's defamation claim, the deficiencies are even more pronounced. As detailed in Section IV, the Complaint fails to identify the following required information: (1) the specific content of the allegedly defamatory statement; (2) which Defendant or agent made the statements; (3) the identity of the third-party recipient; (4) the location where the statements were published, which is necessary to determine applicable law; and (5) any factual basis for the allegations of fault or special damages. These omissions are beyond technical defects. They go to the very heart of the claim. Defendants cannot know whether they are individually accused of

28

making defamatory statements, what those statements allegedly were, or how they could have been false. Without this information, it is impossible for Defendants to admit or deny the allegations, assert applicable privileges or defenses, or otherwise respond meaningfully to the claim.

Rule 12(e) exists precisely to address situations such as this one, where a pleading's vagueness and ambiguity prejudice a defendant's ability to respond. Accordingly, if the Court does not dismiss Plaintiff's claims outright, Defendants respectfully request that Plaintiff be ordered to amend its Complaint to: (1) identify specifically which Defendant is a party to Plaintiff's declaratory judgment and contract claim, (2) specify the actual damages, if any, Plaintiff has suffered as a result of the alleged breach of contract, including the methodology and factual basis for any claimed lost profits; (3) identify the publisher of the alleged defamatory statement; (4) specific defamatory statements at issue, including their content, the speaker, and the context in which they were made; (5) identify the third-party recipient of the alleged defamatory statements and the location of publication; and (6) set forth factual allegations supporting the elements of fault and damages for the defamation claim. Without such clarification, Defendants are unable to fairly respond to the Complaint and are prejudiced in their ability to defend this action.

## **CONCLUSION**

Defendants respectfully request this Court grant their Motion to Dismiss as follows:

(1) dismiss Shumay and Terwilliger for lack of personal jurisdiction pursuant to Rule 12(b)(2),

(2) to the extent Plaintiff's declaratory judgment and contract claims are asserted against Terwilliger and Shumay individually, dismiss the claims against them because neither is a party to the MOU,

(3) dismiss Plaintiff's breach of contract claim because the sole quantified damages allegation is speculative and hypothetical, consisting of a projected gross revenue figure untethered to any actual loss or cognizable lost profits methodology,

(4) dismiss Plaintiff's declaratory judgment claim because it is duplicative of Plaintiff's contract claim and resolves disputed contract issues in a piecemeal fashion;

(5) dismiss Plaintiff's defamation claim because the Complaint fails to identify the specific defamatory statements, the speaker, the third-party recipient, the location of publication, or any factual basis for the elements of fault or damages.

In the alternative, if the Court declines to dismiss Plaintiff's claims against one or more of the Defendants, then Defendants request that the Court

(1) strike Paragraphs 9, 10, and 11 of the Complaint as immaterial, impertinent, and prejudicial pursuant to Federal Rule of Civil Procedure 12(f), and
(2) order Plaintiff to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), specifying:
  (a) which Defendant is a party to Plaintiff's declaratory judgment and contract claim,
  (b) the actual damages, if any, Plaintiff has suffered as a result of the alleged breach of contract, including the methodology and factual basis for any claimed lost profits;
  (c) the publisher of the alleged defamatory statement;
  (d) the specific defamatory statements at issue, including their content, the speaker, and the context in which they were made;
  (e) the third-party recipient of the alleged defamatory statements and the location of publication; and factual allegations supporting the elements of fault and damages for the defamation claim.

This the 20th day of April, 2026.

Respectfully submitted,

*s/ Lyndey R. Z. Bryant*

Lyndey R. Z. Bryant (Fed ID No. 11506)
Caroline A. Murphy (Fed ID No. 14646)
ADAMS & REESE LLP
1221 Main Street, Suite 1200
Columbia, South Carolina 29201
Telephone: 803-254-4190
lyndey.bryant@arlaw.com
caroline.murphy@arlaw.com
*Attorneys for Defendants MGoBlue, LLC, Pure Home 365, LLC, RTC Management Group, LLC, Rob Terwilliger, and Rob Shumay*

30